UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANTHONY C. RENO and
KIMBERLY RENO,

CIVIL NO. 01-2331 (JNE/JSM)

Plaintiffs,

v.

ORDER

SUPPORTKIDS, INC., a Texas corporation; CHILD SUPPORT ENFORCEMENT, INC., a Texas corporation; and RICHARD C. FRY,

Defendants.

The above matter came before the undersigned United States Magistrate Judge on July 2, 2003, upon plaintiffs' Motion to Compel and for Related Relief [Docket No. 12]. Karl A. Oliver, Esq. appeared on behalf of plaintiffs. Jonathan M. Bye, Esq. appeared on behalf of defendants.

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

**IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion to Compel [Docket No. 1] is GRANTED in part and DENIED part as provided in the Memorandum following this Order;

2. Consistent with the Memorandum following this Order, Supportkids, Inc., will provide amended responses to plaintiffs' first set of Interrogatories and Requests for Production of Documents, and a privilege log, by August 1, 2003.

JUL 1 8 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

3. Plaintiffs' Motion for attorneys' fees and costs pursuant to Federal Rules of Civil Procedure 37 is DENIED.

4. Plaintiffs' motion to extend the Pretrial Order's scheduling deadlines is GRANTED as follows:

a. The discovery deadline in this case shall be extended to **September 1, 2003**.

b. The only discovery that will be allowed during this extension of time is as follows: (1) Supportkids' amended answers and responses to plaintiffs' first set of Interrogatories and Requests for Productions consistent with this Order and Memorandum; (2) the Rule 30(b)(6) deposition of Supportkids; (3) the deposition of Fry; (4) the depositions of plaintiffs; and (5) Supportkids response to plaintiffs' second set of discovery.[1] No other discovery may occur during this extension of time for discovery.

c. The deadline for non-dispositive and dispositive motions will be extended to:

**September 6, 2003** -- Deadline for service and filing of nondispositive motions.

**November 1, 2003** -- Deadline for service and filing of dispositve motions.

d. Plaintiffs' may serve and file any motion to amend their Complaint to add punitive damages anytime prior to the deadline for nondispositve motions set forth above.

e. The trial ready date shall be extended to **January 1, 2004**.

f. An amended pretrial scheduling order will be issued separately.

---

[1] This Court makes no determination as to the adequacy of Supportkids' responses to plaintiffs' second set of discovery as the issue is not presently before the Court.

5. The depositions of defendants Supportkids, Inc. and Richard C. Fry shall take place in Texas.

Dated: July 18, 2003

JANIE S. MAYERON
United States Magistrate Judge

**MEMORANDUM**

## I. FACTUAL BACKGROUND

Plaintiffs Anthony Reno and Kimberly Reno, commenced the present lawsuit in December of 2002 against defendant Supportkids, Inc. ("Supportkids"). Supportkids, a Texas Corporation, is engaged in the business of collecting child support. See Answer of Supportkids, ¶ 18. Defendant Child Support Enforcement, Inc., is an allegedly defunct corporation whom defendants claim has never been served. Defendant Richard C. Fry ("Fry"), is an attorney licensed to practice in the state of Texas. Fry is not directly employed by Supportkids, however, Fry spends most of his time representing Supportkids. See July 3, 2003 Letter Submitted to the Court by Jonathan M. Bye, Esq. Plaintiffs' Complaint alleges that defendants, in their attempt to collect child support allegedly due from Anthony Reno, engaged in fraud; violated the Fair Debt Collections Practices Act (15 U.S.C. § 1962 et seq.), the Uniform Deceive Trade Practices Act (Minn. Stat. §325D.44-48), and the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. 325F.68-70); and committed slander of title, abuse of process, defamation, intentional infliction of emotional distress, and negligence.

On October 30, 2002, plaintiffs served their first set of Interrogatories and Document Requests on Supportkids. On or about November 25, 2002, counsel for the Supportkids made a request for a two-week extension to provide responses to plaintiffs' discovery. Plaintiffs granted Supportkids' request, rendering the discovery responses due on December 16, 2002. No responses were served on December 16, 2002 as promised and Supportkids made no additional requests for an extension of time. Having received no responses from Supportkids, plaintiffs' counsel sent a letter to Supportkids' counsel on January 6, 2003, reminding him of his promise to serve responses to the discovery on December 16, 2002 and requesting responses to plaintiffs' discovery requests by January 13, 2003. See Affidavit of Karl A. Oliver ("Oliver Aff."), ¶3, Ex. B. Supportkids' counsel did not respond to Oliver's letter. Instead, Supportkids served its responses to plaintiffs' requests for discovery on January 23, 2003. Supportkids' counsel stated at the hearing that there was no reason as to why he did not respond to Oliver's January 6 letter or why his client's responses were served late, other than he had missed the deadline.

Unsatisfied with Supportkids' discovery responses, plaintiffs' counsel sent a letter to Supportkids' counsel on April 18, 2003, outlining why he believed the answers and responses were inadequate. Id. at ¶ 8, Ex. C. In response, Supportkids' counsel asserted in a letter dated April 30, 2003, that he was surprised to receive an objection regarding his client's discovery responses, given that they had been served almost three months earlier. Id. at ¶ 9, Ex. D. Further, Supportkids' counsel asserted, in response to plaintiffs' criticisms of his client's discovery responses, that the responses were all appropriate. Id.

Chief Magistrate Judge Jonathan Lebedoff's ("Magistrate Lebedoff") April 5, 2002 Pretrial Order provided that June 1, 2003 was the last day for discovery in this case. On May 20, 2003, a Rule 30(b)(6) notice was served on Supportkids and a deposition notice was also served on Fry. See Affidavit of Jonathan M. Bye ("Bye Aff."), ¶ 3, Ex. B. The depositions were noticed to occur on May 29, 2003, which was only nine days after the service of the deposition notices, and only two days prior to the discovery cut-off date of June 1, 2003. When asked by the Court why he waited until right before the discovery deadline to take the deposition of defendants, plaintiffs' counsel answered that he anticipated he would not be able to take the depositions prior to the discovery deadline, and that he served the notices to preserve his right to take the depositions. It was also his position that given the present discovery dispute, it would have been a waste of time to take the depositions because Supportkids had not provided him with complete responses to plaintiffs' written discovery requests.

The 30(b)(6) notice, served on Supportkids states as follows:

> Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff Anthony C. Reno, shall take the deposition of Defendant. Supportkids, Inc[.], a Texas corporation, before a qualified court reporter by stenographic means on May 29, 2003, at 1:00 p.m. The deposition shall take place at Winsor Office Plaza, 1935 West County Road B2, Roseville, MN 5513 in the building's lower level conference room.

Id.

On May 21, 2003, Supportkids' counsel sent a letter responding to plaintiffs' deposition notices. Id. at ¶ 4, Ex. C. In this letter, the defendants objected to the depositions based on the short notice given by plaintiffs. In addition, defendants

complained that the Rule 30(b)(6) notice was deficient because it did not specify the topics to be covered at the deposition, as required by the Federal Rules of Civil Procedure 30(b)(6). Id. Plaintiffs' counsel acknowledged during the hearing that the Rule 30(b)(6) notice was deficient and that he would remedy any defect in a new Rule 30(b)(6) notice. Defendants also objected to having the depositions take place in Minnesota since Supportkids and Fry are located in Texas. Id.

On May 30, 2003, plaintiffs filed a Motion to Compel Discovery requesting that the Supportkids' objections to their first set of discovery requests be waived because they were untimely and because Supportkids gave no reasons for its objections. In addition, plaintiffs requested that the Court order Supportkids to provide full and complete responses to their discovery requests, and that plaintiffs be awarded costs and attorney's fees associated with bringing the motion to compel.

In addition to the relief requested via their motion to compel, plaintiffs requested an extension of the discovery, non-dispositive motion and dispositive motion deadlines. Further, plaintiffs sought to confirm Magistrate Lebedoff's alleged ruling at the Rule 16 conference that a motion to amend to add punitive damages could be brought anytime prior to trial.[2] Lastly, plaintiffs seek an order forcing defendants to submit to their depositions in Minnesota within the next 60 days.

---

[2] Plaintiffs allege that during the April 5, 2002 Scheduling Conference, Magistrate Lebedoff ruled it was unnecessary to extend the timing to amend the pleadings because motions to amend could be brought anytime up until trial. See Plaintiffs' Memorandum of Law in Support of Motion to Compel and for Related Relief ("Pls.' Memo.") at p. 3. Defendants' attorneys assert that they do not recall any discussion concerning a different deadline for bringing motions to amend to add punitive damages. See July 3, 2003 Letter Submitted to the Court by Jonathan M. Bye, Esq.

In opposition, Supportkids alleges that its responses were appropriate, that the general objections made are allowed for under the Federal Rules of Civil Procedure, and that many of plaintiffs' requests are overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Further, Supportkids asserts that waiver of its objections, because they were late, is unwarranted since plaintiffs have not been prejudiced by Supportkids' actions. In addition, despite the fact that the parties have agreed to the taking of plaintiffs' depositions after the discovery deadline without approval of the Court, defendants ask this Court deny plaintiffs' request for an extension the Pretrial Order deadlines. Finally, defendants ask that this Court, order that the depositions of Supportkids and Fry be held in Texas, the present location of defendants.

## DISCUSSION

### I. Plaintiffs' Motion to Compel Discovery

#### A. Waiver of Supportkids' Objections

Federal Rules of Civil Procedure 33 and 34 both require that party "serve a copy of the answers and objections if any, within 30 days after the service of the interrogatories. Fed. R. Civ. P. 33(b)(3). The same is true with responses to requests for production of documents. See Fed. R. Civ. P. 34(b). Federal Rules of Civil Procedure 33(b)(4) specifies the sanction for failure to make objections to interrogatories in a timely manner: "[a]ny ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown."[3] See also Pham

[3] The standard for determining waiver of untimely objections is not, as Supportkids argues, whether the plaintiffs have been prejudiced by its failure to answer and object in a timely manner.

v. Hartford Fire Insurance Co., 193 F.R.D. 659, 661 (D. Colo. 2000) (citations omitted). Further, objections not made within 30 days of a document request are untimely and therefore waived." Microsoft Corp. v. Multi-Tech Systems, Inc., No. Civ. 00-1412(ADM/RLE), 2002 WL 273146 at *1 (D. Minn. Feb. 26, 2002) (citing Fed. R. Civ. P. 34(b); Mackey v. IBP, Inc., 167 F.R.D. 186, 206 (D. Kan. 1996)).

Here, the responses to plaintiffs' requests for discovery were due on or about December 2, 2003. Supportkids was given an extension by plaintiffs until December 16, 2002 to answer plaintiffs' discovery. Supportkids did not serve its responses until January 23, 2003. Supportkids' counsel stated at the hearing that there was no good reason for the late responses or his failure to request a further extension to respond to the discovery. As such, there is no "good cause" for Supportkids' failure to object in a timely manner. "Discovery deadlines are intended to ensure the efficient progress of a lawsuit and counsel are expected to comply with them." Blumenthal v. Drudge, 186 F.R.D. 236, 240 (D.D.C. 1999). Because Supportkids failed to make timely objections to plaintiffs' interrogatories and requests for production of documents in accordance with the Federal Rules of Civil Procedure, all of its objections, except for the attorney-client and work product privileges, are waived. See Jayne H. Lee, Inc. v. Flagstaff Indus. Corp., 173 F.R.D. 651, 657, n. 16 (D. Md. 1997) (finding the waiver of the attorney-client privilege to be too draconian of a sanction); see also E.E.O.C. v. Safeway Store, Inc., No. C-00-3155 THE(EMC), 2002 WL 31947153 at *2 (N.D. Cal. Sept. 16, 2002) ("Finding that a party has waived its right to assert a privilege objection due to it conduct (or lack of conduct) is a harsh sanction utilized where that party has unjustifiably delayed discovery.").

With respect to Supportkids' attorney-client and work product privilege objections that are not waived, Supportkids is still required to supply plaintiffs with a privilege log. Federal Rules of Civil Procedure 26(b)(5) requires a party basing an objection on privilege or protection of trial preparation materials to expressly make the claim of privilege and "describe the nature of the documents, communications, or things not produced . . . in a manner that, without revealing information itself privileged . . . will enable [the] other part[y] to assess the applicability of the privilege." Supportkids is ordered to provide plaintiffs with a copy of its privilege log by August 1, 2003. Failure to abide by this deadline may result in the waiver of Supportkids' attorney-client and work product privileges.

The Court will now proceed to determine the adequacy of Supportkids' answers to plaintiffs' Interrogatories and its responses to plaintiffs' Requests for Production of Documents.

B. Supportkids' Answers to Plaintiffs' Interrogatories

**1. Interrogatory No. 2**

> Interrogatory No. 2 Please identify all documents, including e-mail or documents stored on a computer data base or system, in your possession or control relating, referencing, concerning Child Support, Mr. Reno or this action.
>
> > **ANSWER NO. 2** Subject to Defendant's general objections, any such documents will be produced at a time and place agreed upon by counsel.

Plaintiffs argue that Supportkids' cannot answer interrogatories by simply referring to documents rather than identifying them. It is the understanding of this Court that plaintiffs' counsel has not yet reviewed or received a copy of the documents in the

possession of Supportkids that are responsive to plaintiffs' interrogatories and requests for production of documents.[4] However, plaintiffs' counsel's failure to obtain the documents at issue does not exempt Supportkids from answering plaintiffs' Interrogatories. Pursuant to Fed. R. Civ. P. 33(d), Supportkids is directed to provide plaintiffs with a list identifying documents that are responsive to Interrogatory No. 2, or with the documents it is producing, specify those documents that are responsive to Interrogatory No. 2.

**2. Interrogatories Nos. 3, 9, 13, and 22**

> Interrogatory No. 3 Please describe all communications by you with Mr. Reno or Mrs. Reno, including the dates or approximate dates of such communication.
>
> > **ANSWER NO. 3** Defendant's present knowledge of any such communications is limited to the information set forth in documents which will be produced at a time and place agreed upon by counsel.
>
> Interrogatory No. 9 Please state with particularity the computation, manner and method used to obtain your Claim Amount including the formula used to compute such amount or amounts.
>
> > **ANSWER NO. 9** With respect to interrogatory No.9, Defendant will produce at a time and place agreed upon by counsel a document reflecting the computation and how it has been made.
>
> Interrogatory No. 13 Please state with particularity your response, reaction or investigation, if any, to being informed that Mr. Reno disputed his alleged Child Support obligation, including but not limited to Mr. Reno's statement to you that Mr. Reno's daughter, Summer Reno, had been adopted.

---

4 Supportkids' counsel notified plaintiffs' counsel that the approximately one-inch thick documents were available for review or, in the alternative, that copies of the documents could be made for $.20 per page. See Bye Aff. ¶ 2, Ex. A; see also Defendants' Memorandum in Opposition to Motion to Compel ("Defs.' Memo.") at p. 2.

**ANSWER NO. 13** Subject to its general objections, Defendant states that any such response, reaction or investigation of which it currently has knowledge is reflected in the documents that will be produced at a time and place to be agreed upon by counsel. See also, Answer to Interrogatory No. 10.

Interrogatory No. 22 Please describe with particularity all communications you have had with Sonia Falcon from 1997 to the present.

**ANSWER NO. 22** Defendant's present knowledge of any such communications is limited to the information set forth in documents which will be produced at a time and place agreed upon by counsel.

Supportkids' answers to Interrogatories Nos. 3, 9, 13 and 22 all generally refer plaintiffs to documents which will be produced at a time and place agreed upon by counsel. According to the plaintiffs, a "responding party has an obligation to fully answer each interrogatory asked; a responding party cannot simply say refer to documents." Pls.' Memo. at p. 9. It is true that "an answer to an interrogatory 'must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.'" Smith v. Logansport Community School Corp., 139 F.R.D. 637, 650 (N.D. Ind. 1991) (emphasis added) (quoting Moore's Federal Practice (2d ed. 1991) ¶33.25[1]) (string citation omitted). However, a party may choose to produce business records in lieu of responding to a specific interrogatory. See Fed. R. Civ. P. 33(d). If the responding party chooses that course of action, it must specify where in the documents its producing the answer to the interrogatory may be found. Id.

Here, Supportkids referred plaintiffs to documents that supposedly contain the information sought in Interrogatory Nos. 3, 9, 13, and 22. However, generally referring to documents is not a sufficient answer to an interrogatory. While the documents referenced by Supportkids may contain the information sought by plaintiffs' interrogatories, Supportkids has not specified where in the documents the information sought by each interrogatory may be found. Therefore, Supportkids must either answer interrogatories, or if it chooses to refer to documents it is producing, it must specify which document(s) contain the relevant information sought for each interrogatory.

**3. Interrogatories Nos. 4, 6, 7, 8**

> Interrogatory No. 4 Please state with particularity the facts supporting any contention you have or have had that Mr. Reno has or had an obligation to pay Child Support.
>
> > **ANSWER NO. 4** Defendant objects to this interrogatory on the grounds that it is vague and overly broad. Without waiving this objection and subject to Defendant's general objections, Defendant states the following. An application submitted by Sonia B. Falcon to Defendant stated that Mr. Reno had such an obligation. Defendant has received documents from the Child Support Enforcement Division of the District Attorney of New Orleans, State of Louisiana, reflecting such an obligation. Defendant has received a copy of a judgment from the State of Louisiana reflecting such an obligation and a Rule to Show Cause signed by an Assistant District Attorney for the Orleans Parish, State of Louisiana, indicating that Mr. Reno had failed to pay such an obligation. Mr. Reno has admitted the existence of such an obligation in conversations with Defendant's representatives. Copies of the documents referenced herein will be produced at a time and place agreed upon by counsel.

Interrogatory No. 6 Please state with particularity the factual basis giving rise to your filing of the Lien.

> **ANSWER NO. 6** The factual basis giving rise to the filing of the Lien is that Mr. Reno had (and has) an obligation to pay child support as referenced in response to Interrogatory No.4 that he has not met.

Interrogatory No. 7 If you contend that Lien on Plaintiffs' home is appropriate or valid, please state with particularity the facts supporting your contention.

> **ANSWER NO. 7** Defendant does so contend. See Response to Interrogatory No. 6.

Interrogatory No. 8 Please state with particularity the factual basis giving rise to your Claim Amount.

> **ANSWER NO. 8** See answer to Interrogatory No. 4.

Interrogatories Nos. 4, 6, 7, and 8 are all related to each other in that Supportkids refers to the answer to Interrogatory No. 4, in some manner, in its answers to Interrogatories Nos. 6, 7, and 8. Plaintiffs argue that the answer to Interrogatory No. 4 is not a full and complete answer. Pls.' Memo. at p. 10. Specifically, plaintiffs argue that Supportkids' answer to Interrogatory No. 4 should have answered the following questions:

> [H]ow much has Mr. Reno already paid prior to Supportkids becoming involved? How much does Mr. Reno allegedly owe, if anything, if his past payments have been credited and how is such amount calculated? Does the State of Louisiana child support agency claim he owes this amount? What is the effect of the adoption in 1987 and the statute of limitations?

Id.

Interrogatory No. 4 only asks Supportkids to provide the facts supporting any contention that Anthony Reno has or had an obligation to pay child support.

Supportkids' answer responds to this question. Interrogatory No. 4 does not ask how much Anthony Reno allegedly owes, if the State of Louisiana Child Support Agency claims he owes any child support, nor does it ask for the effect of an adoption and the statue of limitations. These are appropriate questions for follow-up discovery, which plaintiffs may or may not have yet asked. Plaintiffs may not use their motion to compel to circumvent the Federal Rules of Civil Procedure to obtain information they have not requested. As such, plaintiffs' motion to compel with regards to Interrogatory No. 4 is denied.[5]

Plaintiffs argue that the answers to Interrogatory Nos. 6, 7, and 8 are conclusory and a complete failure to answer. Pls.' Memo. at p. 10-11. Supportkids, in its answer to Interrogatory No. 6, states that the basis for filing the lien on plaintiffs' property is contained in the answer to Interrogatory No 4, which Court finds states with sufficient particularity the factual basis as to why the lien was filed. The Court also finds that the same is true for Supportkids' answer to Interrogatory No. 7. Interrogatory No. 8 asks for the factual basis-giving rise to Supportkids' "Claim Amount." In this case, it is impossible for this Court to determine whether the answer to Interrogatory No. 4 is a sufficient response to Interrogatory No. 8 because plaintiffs have not defined "Claim Amount" for the Court or submitted to the Court a copy of their Interrogatories, which may contain the definition of the phrase. As a consequence, the Court does not know if the plaintiffs are referring to the child support claim amount or if they are referring to the damages alleged in this case. Because plaintiffs did not provide adequate information

---

[5] Supportkids is reminded that they have a duty to supplement their response to Interrogatory No. 4 as information becomes available. See Fed. R. Civ. P. 26(e).

to analyze Interrogatory No. 8 in light of Supportkids' answer to Interrogatory No. 4, plaintiffs' motion to compel with respect to Interrogatory No. 8 is denied.

For the reasons stated above, plaintiffs' motion to compel with respect to Interrogatory Nos. 4, 6, 7 and 8 is denied.

**4. Interrogatory Nos. 10, 11, and 12.**

> Interrogatory No. 10 If you contend that Mr. Reno is obligated to pay ongoing Child Support accruing after the adoption of Summer Reno, please state with particularity the factual basis for such contention.
>
> > **ANSWER NO. 10** Defendant objects to this interrogatory as vague. Without waiving this objection, Defendant states that it does not contend that after the adoption of Summer Reno that Mr. Reno had an obligation to pay child support for periods of time thereafter. However, Defendant does contend that the adoption of Summer Reno in no way eliminated Mr. Reno's obligation to child support which had accrued prior to the adoption.
>
> Interrogatory No. 11 If you contend that Mr. Reno is obligated to pay Child Support payments accruing more than ten years from the date such payments first accrued, please state with particularity you the factual basis for such contention.
>
> > **ANSWER NO. 11** In addition to whatever moral obligation Mr. Reno may have, the factual basis for the contention that he is obligated to pay such child support is that he has been ordered to pay it and not been absolved of the obligation to do so. Because Mr. Reno resides in Minnesota, a proceeding for arrears could be brought in Minnesota pursuant to the Uniform Interstate Family Support Act ("UIFSA"), Minn. Stat. 518C.101-.902. Pursuant to Minn. Stat. § 518C604, the applicable statute of limitations is the statute of limitation of Minnesota or Louisiana, whichever is longer. In Minnesota, there is no statute of limitations for child support arrearages that have not yet been entered by a court. Moreover, any applicable statute of limitation would not terminate a support obligation; it would only provide an affirmative defense that could be raised by an obligor in a court proceeding.

> Interrogatory No. 12 If you contend that you have followed the provisions of the Uniform Interstate Family Support Act as codified in Louisiana Statutes Children's Code Articles 1301.1 — 1308.2 and/or Minnesota Statute §§ 518C.101-518C.902 as they relate to Child Support and you [sic] Claim Amount, please state with particularity the factual basis for such contention.
>
> > **ANSWER NO. 12** Defendant does contend that it followed the applicable provisions of the statutes and the factual basis for that contention is that it has not violated any applicable provisions of these statutes.

Interrogatory Nos. 10-12 are contention interrogatories. "An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact . . . ." Fed. R. Civ. P 33(c); see also United States v. Beatrice Foods Co., 52 F.R.D. 14, 19-20 (D. Minn. 1971).

Plaintiffs claim that Supportkids' answer to Interrogatory No. 10 "is incomplete because it does not state clearly and fully the amounts that are allegedly are owing prior to the 1986 adoption, how much was actually paid by Mr. Reno, and what it [sic] any interest rate they are using to come up with their total. Interrogatory 10 is very clear and unambiguous – the answer should also be straight forward." Pls.' Memo. at p. 12. Plaintiffs asked if it was the Supportkids' contention that Mr. Reno owed child support after the adoption of Summer Reno. Supportkids responded that it was not its contention that Mr. Reno owed any child support after the adoption. Contrary to plaintiffs' assertion, Supportkids' answer is straightforward and responsive to the interrogatory. Interrogatory No. 10 does not ask how much Anthony Reno owed prior to the adoption, how much was actually paid by Anthony Reno and what, if any, interest rate Supportkids was using to come up with their total. As stated previously, plaintiffs cannot use this Court to compel

answers to questions not asked. The proper vehicle for obtaining the answers to the questions set forth in plaintiffs' memorandum are further written discovery or depositions. Therefore, plaintiffs' motion to compel with regards to Interrogatory No. 10 is denied.

Interrogatory No. 11 asks for the factual basis for Supportkids' assertion that Mr. Reno is obligated to pay child support payments accruing more than ten years from the date such payments first accrued. In essence, this interrogatory is asking for Supportkids' opinion as to the legal justification for the assertion that a child support obligation can last beyond the ten years. Supportkids has provided plaintiffs with an adequate response to its interrogatory. Plaintiffs' motion to compel with regards to Interrogatory No. 11 is denied.

Plaintiffs claim that Supportkids' answer to Interrogatory No. 12 is a complete failure to answer. See Pls.' Memo. at p. 14. Supportkids' answer is nonsensical. Supportkids provides that its factual basis for the contention that it followed the provisions of the Uniform Interstate Family Support Act as codified in Louisiana Statutes Children's Code Articles 1301.1 — 1308.2 and/or Minnesota Statute §§ 518C.101-518C.902 is that it did not violate these statues. In other words, Supportkids contends that it followed these legal provisions because it followed these provisions. The interrogatory asks for a factual basis and not a conclusion. As such, Supportkids are ordered to provided a complete factual basis for its contention that it complied in this case with the statutes listed in Interrogatory No. 12.

**5. Interrogatory Nos. 14, 15, 16, and 17**

Supportkids provided no responses to Interrogatory Nos. 14-17, except for a general litany of objections. As stated previously, Supportkids' objections, except for the

attorney-client and the work product privileges, have been waived to due to its late responses. As such, Supportkids' is ordered to provide answers that are responsive to these interrogatories.

**6. Interrogatory Nos. 18 and 19**

> Interrogatory No. 18 Please state with particularity the steps, policies, procedures, and guidelines, if any, that are taken by you as a part of you [sic] child support collections business to ensure that child support debts you investigate or attempt to collect on are not legally barred in whole or in part between 1997 and the present.
>
> > **ANSWER NO. 18** Defendant objects to this interrogatory on the grounds that it is vague and overly broad and on the grounds that it assumes that Defendant has an obligation not to seek to collect debts that may be subject to a statute of limitations affirmative defense. Defendant has no such obligation. Without waiving its objections, Defendant states that it generally requires an application setting forth the amount of the child support debt, obtains a copy of any applicable court documents to verify the debt, reviews the applicable statutes of limitation, if any, on the collection of such debts and investigates any objections by the debtors that no debt is owed.
>
> Interrogatory No. 19 Please state with particularity how such steps, policies, procedures and guidelines referenced in your answer to Interrogatory No. 18 were followed or handled by you in the case of your claim against Mr. Reno.
>
> > **ANSWER NO. 19** Defendant incorporates by reference its objections to Interrogatory No. 18. Without waiving its objections, Defendant states that the application was obtained, the relevant court orders were obtained, the appropriate statutes of limitation were reviewed and Mr. Reno's objections were investigated.

Plaintiffs object to Supportkids' answer to Interrogatory No. 18 because they claim it is not "full, complete and thorough." Pls.' Memo. at p. 18. Plaintiffs argue they are entitled to a thorough discussion of Supportkids' investigation process and the

procedures used to ensure that child support obligations are actually valid, owing, and accurate. Id. Supportkids listed the procedures it uses to ensure that child support obligations are accurate: (1) they require any application listing the debt owed; (2) they obtain all court documents to verify the debt; (3) they review the applicable statute of limitations; and (4) they investigate the objections of any debtors. The first three steps listed by Supportkids are sufficiently complete. However, this Court is troubled by the failure of Supportkids to provide, with particularity, how it investigates the objections of debtors, an issue which is central to the dispute between the parties. The interrogatory does not only ask whether an investigation was conducted, but also inquires into the steps, policies, procedures and guidelines used in the investigation. As such, this Court orders Supportkids to provide, in detail, the steps, policies, procedures and guidelines it follows when investigating the objections of debtors that no debt is owed.

Similarly, for the reasons discussed with regards to Interrogatory No. 18, this Court finds that Supportkids response to Interrogatory No. 19 is inadequate regarding the investigation of Anthony Reno's objections that he owed no child support. Therefore, this Court orders Supportkids to provide, in detail, the steps, policies, procedures and guidelines it followed to investigate Anthony Reno's objections to the claim of child support owed.

**7. Interrogatory No. 20**

> Interrogatory No. 20 Please describe with particularity the factual basis for your denial in your Answer in this matter to paragraph 90 of Plaintiffs' Complaint.
>
> **ANSWER NO. 20** Defendant had no such actual knowledge that the child support was not owed and based on reliable information did believe and still believes that the child

support is owed, that it had the right to demand payment of it and that it had the right to file the Lien.

Interrogatory No. 20 refers to paragraph 90 of plaintiffs' Complaint which alleged as follows: "Defendant had actual knowledge that the purported child support was not owed, and they had no right to file a Lien on the Reno's property in Anoka, Minnesota." Plaintiffs argue that Supportkids' answer to Interrogatory No. 20 is vague and conclusory. Pls.' Memo. at p. 19. Supportkids' response to Interrogatory No. 20 reiterates, for the most part, its denial of paragraph 90 of plaintiffs' Complaint. The interrogatory asks for the factual basis for the denial, not a reiteration of the denial. Further, Supportkids' response, in its answer to Interrogatory No. 20, that based on reliable information it believes that the child support is owed and that it had the right to file the lien, demonstrates that the Supportkids had a factual basis for its denial. Accordingly, Supportkids shall provide the factual basis of its denial to paragraph 90 plaintiffs' Complaint as requested for in Interrogatory No. 20.

**8. Interrogatory No. 21**

Interrogatory No. 21 Please describe with particularity the factual basis for your denial in your Answer in this matter to paragraph 47 of Plaintiffs' Complaint.

**ANSWER NO. 21** Defendant believes that the records of Texas do not show one way or the other whether any child support obligation is owed by Mr. Reno. Defendant believes that the records of the State of Louisiana do not indicate that no child support obligation is owed by Mr. Reno, although they may indicate that the file has been closed due to Mr. Reno's relocation to Minnesota.

Plaintiffs assert that Supportkids' answer to Interrogatory No. 21 does not provide any factual basis for Supportkids' denial paragraph 47 of its Complaint. Paragraph 47 of

plaintiffs' Complaint provides as follows: "Both the States of Louisiana and Texas showed that they had no record of any child support owed by Mr. Reno." Supportkids responded to the interrogatory by stating its beliefs as to whether Louisiana and Texas had any record of child support owed by Reno. Interrogatory No. 21 does not ask for Supportkids' beliefs as to whether Louisiana and Texas had records of any owed child support; it asks Supportkids for the factual basis of its denial of paragraph 47 of plaintiffs' Complaint. If Supportkids has no factual basis it should state so. If it does have a factual basis for its denial, it shall state that basis with particularity.

**9. Interrogatory No. 23**

> Interrogatory No. 23 Please state succinctly, but with particularity, the substance of each person's knowledge that you have identified in your answer to Plaintiffs' Interrogatory No. 1 in this matter.
>
> **ANSWER NO. 23** See Response to Interrogatory No. 1.

Plaintiffs argue that Supportkids' answer is improper as it refers to a different interrogatory answer. See Pls.' Memo. at p. 20. When answering an interrogatory a party may respond by referring to the answer of another interrogatory, so long as it is possible to determine whether an adequate answer has been given without an elaborate comparison of answers. Smith, 139 F.R.D. at 650 (citations omitted). In this case, it is impossible for this Court to determine whether the answer to Interrogatory No. 1 is a sufficient response to Interrogatory No. 23 because plaintiffs have not submitted to the Court a copy of Interrogatory 1 or its answer. For these reasons, plaintiffs' motion to compel with regards to Interrogatory No. 23 is denied.

C. Responses to Plaintiffs' Requests for Production of Documents

**1. Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, and 17**

Supportkids provided in its responses to Requests for Production of Documents Nos. 1 through 10 and 12 that it would produce responsive documents subject to the general objection. In addition, Supportkids has refused to produce the corporate minute books for Supportkids that are response to Document Request No. 12 on the grounds that this request is "overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks minutes not relating to or referencing Plaintiffs." Supportkids also objects to Document Request No. 17, which asks for production of evidence that will be used at trial, on the grounds it has not yet determined what evidence it will use at trial and because the request seeks information protected by the work product doctrine. As stated previously in Section A of this Memorandum, all of Supportkids' objections, except for the attorney-client and the work product privileges, have been waived to due to Supportkids' untimely responses. Therefore, Supportkids is ordered to make all documents that are responsive to Document Requests Nos. 1 through 10, 12 and 17 available to plaintiffs for inspection or copying.[6] Any claims of attorney-client or work product privileges must be accompanied by a privilege log pursuant to Federal Rules of Civil Procedure 26(b)(5).

**2. Document Request No. 13**

> Request No. 13 Please state with particularity the steps, policies, procedures, and guidelines, if any, that are taken by you as a part of you child support collections business to ensure that child

[6] As to Document Request No. 17, Supportkids will produce these documents when it has made its determination of those documents it intends to use at trial.

support debts you investigate or attempt to collect on are not legally banned in whole or in part.

> **RESPONSE NO. 13** Defendant objects to this request on the grounds that it is not a request for production of documents within the meaning of Rule 34 of the Federal Rules of Civil Procedure.

Plaintiffs, in their memorandum of law, state that under Document Request No. 13 they "seek all documents notwithstanding Defendant's objections as such objections have been waived." Pls.' Memo. at p. 26. However, Document Request No. 13 is an interrogatory and not a request for production of documents under Federal Rules of Civil Procedure 34.[7] As such, plaintiffs' motion to compel is denied as it relates to Document Request No. 13.

**3. Request Nos. 14 and 15**

Request No. 14 Please provide copies of all insurance policies in which you have or may provide insurance coverage and/or insurance defense for any acts or omissions related to collection activities.

> **RESPONSE NO. 14** Defendant does not believe there are any such policies that would cover any of the claims made here. To the extent the request seeks policies that do not cover the claims at issue here, Defendant objects to the request as being overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 15 Please provide all documents relating to you and Plaintiffs' lawsuit on the issues of notification of insurance claims or potential, insurance coverage or insurance defense.

---

7 In fact, this request is virtually identical to Plaintiffs' Interrogatory No. 18.

**RESPONSE NO. 15** There are no such documents.

It appears by Supportkids' responses to Document Request Nos. 14 and 15[8], that there are no insurance policies dealing with collection activities nor documents relating to insurance coverage and plaintiffs' claims. Therefore, plaintiffs' motion to compel as it relates to Document Request Nos. 14 and 15 are denied.[9]

## II. Extension of the Scheduling Deadlines

Plaintiffs have requested a 60-day extension, from the date this Court enters the present Order, of the deadline for discovery. Further, plaintiffs have also requested that the non-dispositive and dispositive motion deadlines be extended by 30 days from the discovery deadline. Pls.' Memo. at p. 28. Rule 16(b) of the Federal Rules of Civil Procedure states: "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Under the Local Rules of this Court, a Magistrate Judge is authorized to modify pretrial schedules "upon written motion and for good cause shown." Local Rule 16.3(a). The good cause standard of Rule 16(b) "is an exacting one, for it demands a demonstration that the existing schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'" Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota, 187 F.R.D. 578, 581-82 (D. Minn. 1999) (quoting Fed. R. Civ. P. 16(b), Advisory Committee Notes – 1983 Amendment) (additional citation omitted). "[T]he

8 Although plaintiffs listed Document Request No. 15 in their memorandum of law, they do not state why they objected to Supportkids' response.

9 Supportkids is under an obligation to supplement these requests for production of documents if is discovers that insurance coverage does exist relating to plaintiffs' claims. See Fed. R. Civ. P. 26(e).

question of good cause does not turn on the existence or absence of prejudice to the non-moving party." Scheidecker v. Arvig Enterprises, Inc., 193 F.R.D. 630, 631 (D. Minn. 2000) (citation omitted); see also Archer Daniels Midland Co., 187 F.R.D. at 582.

In considering the question of whether good cause has been demonstrated, the Court examines, among other considerations, the statement accompanying the motion required by Local Rule 16.3(b), which requires the moving party to provide to the Court the following information:

(1) What discovery remains to be completed;
(2) What discovery has been completed;
(3) Why all discovery has not been completed; and
(4) How long it will take to complete discovery.

Here, plaintiffs, in their memorandum of law, have stated that they anticipate it will take an additional 60 days from the issuance of this Order to complete the following discovery:

> 1) Amended responses (assuming this the motion to compel is granted) to Mr. Reno's first set of discovery requests; 2) responses and answers to the Renos' Second Set of Discovery; 3) The depositions of Defendants; [and] 4) the previously scheduled depositions of Plaintiffs' have been delayed until a time after the current discovery deadline by mutual agreement because of pending settlement discussions. . . .

Pls.' Memo. at p. 28. Plaintiffs did not provide, however, any explanation as to why discovery has not yet been completed, and the evidence before the Court establishes that they have not been diligent in pursuing it.

Supportkids served its responses to plaintiffs' discovery on January 23, 2003. Nevertheless, it was not until April 18, 2003, that plaintiffs' counsel first contacted Supportkids' counsel to discuss the inadequacy of Supportkids' discovery responses,

and it was not until May 20, 2003 that plaintiffs served the deposition notices of Supportkids and Fry. When asked by the Court at the hearing why he waited almost three months to address Supportkids' discovery responses, and until nearly the end of discovery to serve deposition notices and bring the motion to compel, plaintiffs' counsel stated that he did not have a reason for the delay, other than he had been busy on other matters. Plaintiffs' counsel then stated that Rule 16 only requires that a party comply with the deadlines in a scheduling order, but it does not dictate when a party must act within the period allowed for discovery and non-dispositive motions. While this statement is technically correct, it fails to address the requirement that a party requesting an extension must show they have been diligent in pursuing discovery and that despite their diligence, they still require more time.

As stated previously, June 1, 2003 was the last day for discovery in this case. It was not until May 20, 2003, that plaintiffs noticed the depositions of Supportkids and Fry for May 29, 2003. In fact, plaintiffs' counsel stated at the hearing that he scheduled the depositions knowing that they would not go forward prior to the June 1 discovery cutoff deadline. Counsel also argued that he waited so long to notice the depositions of defendants because Supportkids had not provided complete discovery responses.

While it is true that Supportkids' responses were not complete in many instances, plaintiffs were not diligent in moving to compel Supportkids to comply with its discovery obligations. Plaintiffs' counsel waited until April 18, 2003, almost three months after Supportkids served its discovery responses, to put Supportkids on notice that the discovery responses were deficient. If plaintiffs' counsel had acted shortly after he had received defendants' responses, plaintiffs would not have been in the position of trying to

take defendants' depositions and other discovery just prior to the deadline for discovery.

Nevertheless, despite their attorney's conduct, the Renos should not be punished for Supportkids' failure to properly respond to discovery or because their counsel waited until the last minute to pursue and complete discovery. In addition, Supportkids will not be prejudiced by extending the deadline for discovery, as evidenced by the agreement it reached with plaintiffs to conduct the depositions of plaintiffs after the June 1, 2003 discovery deadline.

As such, the discovery deadline in this case shall be extended until September 1, 2003. However, the only discovery that will be allowed during this extension of time is: (1) Supportkids' amended answers and responses to plaintiffs' first set of Interrogatories and Requests for Productions consistent with this Order and Memorandum; (2) the Rule 30(b)(6) deposition of Supportkids; (3) the deposition of Fry; (4) the depositions of plaintiffs; and (5) Supportkids response to plaintiffs' second set of discovery. No other discovery shall occur during this extension of time for discovery. In addition, the deadlines for non-dispositive and dispositive motions will be extended until September 6, 2003, and November 1, 2003, respectively, in order to accommodate the extension of time for discovery. Finally, the trial ready date shall be extended to January 1, 2004.

## III. Location of Defendants' Depositions

The location of a deposition is within the discretion of a Magistrate Judge. Carlson Wagonlit Travel, Inc. v. Invensys PLC, No. Civ. 01-2337 JRT/FLN, 2003 WL 21010961 at * 2 (D. Minn. March 8, 2003); see also Thompson v. Sun Oil Co., 523 F.2d 647, 648 (8th Cir. 1975) (citation omitted). "There is a presumption that corporate employees should be deposed in a location conveniently located to the principle place of

business, but this presumption is a weak one." Id. (citing Sugarhill Records LTD, 105 F.R.D.166, 171 (S.D.N.Y. 1985)). Other courts have found that there is a presumption that the deposition of a defendant will occur in the district of his or her residence. See Federal Deposit Ins. Co. v. La Antillana, S.A., No. 88 Civ. 2670 (JFK), 1999 WL 155727 at *2 (S.D.N.Y. Oct. 5 1990). However, a court may look at several factors to overcome this presumption such as cost, convenience, and efficiency. Id. at *3 (citing Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 550–51 (S.D.N.Y. 1990)).

Here, plaintiffs have noticed the depositions of Supportkids and Fry to take place in Roseville, Minnesota. Supportkids and Fry are both located in Texas. Plaintiffs claim that the depositions should take place in Minnesota because defendants are in better position financially to travel to Minnesota for the depositions than plaintiffs who must pay for their attorney to travel to Texas. See Pls.' Memo. at 29. Even if Supportkids is in a better position financially to incur the expense of travel than plaintiffs, Fry, as an individual, is not directly employed by Supportkids and presumably would have to incur the financial expense of being forced to travel to Minnesota to attend his deposition. Therefore, since there is no basis to force Fry to travel to Minnesota for his deposition, it is most economical and efficient if plaintiffs' counsel takes the corporate deposition of Supportkids on the same trip to Texas to take the deposition of Fry.

In addition, plaintiffs' argument that Supportkids opened themselves up to having to answer for their conduct in this judicial district by placing a lien on property in Minnesota is meritless and plaintiffs have not offered any legal support for this assertion. If personal jurisdiction meant that a defendant could automatically be deposed in the jurisdiction of the presiding court, then this would defeat the presumption that a

deposition occur where a deponent resides. This Court orders that the depositions of defendants shall to occur in Texas.[10]

## IV. Plaintiffs' Request for Attorneys' Fees and Costs

With respect to plaintiffs' motion for attorneys' fees and costs incurred in connection with bringing the motion, plaintiffs' motion is denied. Under Rule 37(a)(4)(A), a party moving to compel discovery may recover attorneys' fees and costs under the following conditions:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A).

In this case, the request for an award of attorneys' fees is denied. Monetary sanctions are not appropriate where, with the exception of the waiver of objections due to untimely responses, this Court denied approximately the same of number of requests for compelling discovery as it granted. Further, the waiver of Supportkids' objections

---

10 The parties may, by mutual agreement, conduct the defendants' depositions by telephone.

serves as an adequate sanction for its actions or inactions. Therefore, this Court finds that under the circumstances of this case an award of fees and expenses is not warranted.

J.S.M.