UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANTHONY C. RENO and KIMBERLY RENO,

Plaintiffs,

v.

SUPPORTKIDS, INC., a Texas corporation; CHILD SUPPORT ENFORCEMENT, INC., a Texas corporation; and RICHARD C. FRY,

Defendants.

CIVIL NO. 01-2331 (JNE/JSM)

ORDER

The above matter came before the undersigned United States Magistrate Judge upon plaintiffs' Motion to Amend Complaint to Allege Punitive Damages and Motion to Compel Discovery [Docket No. 20]. Karl A. Oliver, Esq. appeared on behalf of plaintiffs; Jonathan M. Bye, Esq. appeared on behalf of defendants.

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

**IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion to Amend Complaint to Allege Punitive Damages [Docket No. 20] as to defendant Supportkids, Inc. is **GRANTED** as it relates to plaintiffs' slander of title and defamation claims.

2. Plaintiffs shall serve and file their Amended Complaint no later than **September 17, 2004**.

3. Plaintiffs' Motion to Compel [Docket No. 20] is **GRANTED** in part and **DENIED** part as provided in the Memorandum following this Order.

4. Consistent with the Memorandum following this Order, Supportkids, Inc., will provide plaintiffs with the documents set forth in the Memorandum within 10 days after this Court's entry of the protective order referenced in paragraph 5.

5. The parties shall submit to the Court a stipulated confidentiality agreement and proposed order relating to financial documents ordered produced by this Court on **September 20, 2004**. If the parties cannot agree to an appropriate confidentiality agreement, they will submit their own proposed confidentiality order to the Court for consideration by the Court by this date.

Dated: September 7, 2004

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## MEMORANDUM

## I. PROCEDURAL BACKGROUND

Plaintiffs Anthony Reno and Kimberly Reno, commenced the present lawsuit in December of 2002 against defendants Supportkids, Inc. ("Supportkids"), Child Support Enforcement, Inc., and Richard C. Fry ("Fry"). Supportkids is engaged in the business of collecting child support. See Answer of Supportkids, ¶ 18. Defendant Child Support Enforcement, Inc., is an allegedly defunct corporation whom defendants claim has never been served. Defendant Fry is an attorney licensed to practice in the state of Texas. Fry is not directly employed by Supportkids, however, Fry spends most of his time

representing Supportkids. See July 3, 2003 Letter Submitted to the Court by Jonathan M. Bye, Esq. Plaintiffs' Complaint alleges that defendants, in their attempt to collect child support allegedly due from plaintiff Anthony Reno ("Reno"), violated the Fair Debt Collections Practices Act (15 U.S.C. § 1962 et seq.), the Uniform Deceptive Trade Practices Act (Minn. Stat. §325D.44-48), and the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. 325F.68-70); and engaged in conduct that constituted fraud, slander of title, abuse of process, defamation, intentional infliction of emotional distress, and negligence.

On October 14, 2003, a hearing was held regarding the present motion to amend the Complaint to allege punitive damages against Supportkids and to compel discovery bearing on the claim for punitive damages. Prior to the hearing, defendants Support Kids and Fry (collectively "defendants") brought a Motion for Summary Judgment. On October 15, 2003, this Court entered an Order [Docket No. 27], staying Renos' Motion to Amend Complaint to Add Punitive Damages and to Compel Discovery and for Related Relief until a decision was issued with regards to defendants' motion for summary judgment. On April 13, 2004, United States District Judge Joan Ericksen issued an Order [Docket No. 46] granting in part and denying in part defendants' motion for summary judgment. The only counts surviving summary judgment were Count VI (Slander of Title) and Count VIII (Defamation).

## II. FACTUAL BACKGROUND

Plaintiff Anthony C. Reno and a woman, now known as Sonia Falcon ("Ms. Falcon"), were married in Louisiana in 1975. See Affidavit of Anthony Reno ("A. Reno Aff."), ¶ 6, attached as Ex. C to the Affidavit of Karl Oliver ("Oliver Aff."). They had a daughter together, Summer Reno, who was born in 1978. Id. In 1980, Reno and Ms. Falcon began divorce proceedings. Id. On May 2, 1980, Reno was ordered by a Louisiana state district court to pay child support in the amount of $60.00 per week. Id. This was a temporary order. Id. In the final divorce decree, rendered on May 1, 1981, Reno was ordered to pay $45.00 per week in child support to Ms. Falcon. Id.; see also Oliver Aff., Ex. E. This judgment has not been amended or vacated.

In 1986, the New Orleans District Attorney, who handled Ms. Falcon's child support case, listed Reno's alleged back child support payments at $13,598.25. Id. at ¶ 9. Reno claimed this amount was overstated, as Ms. Falcon had not credited cash payments made by him for child support. Id. In 1988, the New Orleans District Attorney's Office made a motion for an order requiring Reno to pay back child support. Id. at ¶ 11. However, because Ms. Falcon did not appear at the hearing, the motion was dismissed in a judgment dated July 27, 1988. See Oliver Aff., Ex. G.

In 1987, Ms. Falcon married Robert Falcon ("Mr. Falcon"). See Complaint ¶ 27; Answer of Defendant Supportkids, Inc., ¶ 27; see also A. Reno Aff., ¶ 6 On October 21, 1987, Mr. Falcon adopted Summer Reno. See Complaint ¶¶ 28-29; Answer of Defendant Supportkids, Inc., ¶¶ 28-29. The final adoption decree provided that "the child

known to petitioners as Summer Christine Reno, forever be for all legal intents and purposes the child of petitioners, Robert Falcon, to the same extent as if the child had been born of petitioner's marriages to his wife . . ." See Complaint ¶ 30; Answer of Defendant Supportkids, Inc., ¶ 30. It was Reno's understanding that in return for agreeing to the adoption and waiving his parental rights, Ms. Falcon would not attempt to recover any back child support he owed. See A. Reno. Aff. ¶ 10. Reno estimates that he owed approximately $3,000 to $4,000 in back child support at the time of the adoption of Summer Reno. Id.

Supportkids acknowledges that after October 21, 1987, the date of the adoption, Reno had no obligation to pay child support for Summer Reno that would have accrued had the adoption not taken place. See Oliver Aff., Ex. F, Interrogatory No. 10. Between 1987 and 1999, Ms. Falcon made no efforts to seek payment from Reno for any back child support allegedly owed. See A. Reno Aff., ¶ 11.

On February 14, 1999, Ms. Falcon filled out an application to retain Supportkids in order to collect $13,598.25 in back child support that she alleged Reno still owed to her. See Oliver Aff., Ex. H. On September 27, 1999, Ms. Falcon executed an Affidavit requesting that the child support case brought against Reno be dismissed. Id. at Ex. J.

In 1999, a representative from Supportkids called Reno alleging that he owed approximately $120,000 in back child support. See A. Reno Aff., ¶ 12. Reno states that he told Supportkids that his daughter had been adopted by his former wife's husband, so there was no way he could owe such a large amount. Id., at ¶13. Supportkids told Reno

that they would look into the effect of the adoption. See Complaint ¶ 41; Answer of Defendant Supportkids, Inc., ¶ 41.

Supportkids represented that when it takes a case, it obtains copies of court orders to verify the debts, reviews the applicable statute of limitations, and investigates any objections made by the debtor that the debt is not owed. See Oliver Aff., Ex. O, Amended Answer to Interrogatory No. 18. Supportkids also acknowledged on its web site that applicable statute of limitations and adoption can affect the amount owed in back child support. See Answer of Defendant Supportkids, Inc., ¶ 102. According to the Louisiana Child Support Data Base, Reno owed no money, at least as of March 1, 2001, in back child support to Mrs. Falcon. See Oliver Aff., Ex. P.

On April 5, 2000, Fry, on behalf of Supportkids, filed in Anoka County a lien (Doc. No. 1497198) in the amount of $122,474.07 on the Renos' homestead. Ex. Q. According to the lien, it resulted from a child support order entered on May 2, 1980 by the District Court in Orleans Parish County, Louisiana, which required Reno to pay child support in the amount of $60.00 per week. Id.; Answer of Defendant Richard C. Fry, ¶ 69. Fry filed the Notice of Lien, using the Interstate Child Support Lien Form. See April 13, 2004 Order at p. 3. A certified judgment search by the Anoka County Recorders Office failed to identify any order that authorized the lien, from 1985 to the present. See Oliver Aff., Ex., R.

On March 27, 2001, a Supportkids' representative noted in the collector's notes from Supportkids, that this person had reviewed both state laws (presumably Minnesota

and Louisiana) and the file was needed to determine if there was a judgment filed before emancipation. Id., Ex. M, at lines 403-05. The representative stated that a call would be made to the custodial parent so that the representative could "be advised that if she has a judgment which is not over 10 yrs old then we may be able to get somewhere." Id. at lines 410-13. On May 4, 2001, Supportkids contacted Ms. Falcon and asked her if she had a judgment less than ten years old. Id. at lines 430-33. The notes do not state Ms. Falcon's response. However, the notes do state that the lien was to stay and once the property was sold, the money would be collected. Id. at lines 434-41.

Supportkids admits that on or about June 13, 2000, one of its representatives contacted Northland Mortgage by telephone and facsimile to inform it of the filing of the lien against the Renos' property. See Answer of Defendant Supportkids, ¶¶ 77-79. Northland Mortgage nonetheless provided the refinancing, and no proceeds were paid to Supportkids or Ms. Falcon. See April 13, 2004 Order at p. 3.

According to plaintiff Kimberly Reno ("Ms. Reno"), she and her husband discovered the existence of the lien in 2000, when they were denied refinancing to rebuild their garage and complete remodeling in their house. See Affidavit of Kimberly Reno Aff., ¶ 3, attached as Ex. N to Oliver Aff. On November 2, 2001, Northland Mortgage refused to provide the Renos with financing because of a lien placed on their home (Doc. No. 1497198) in the amount $122,474.07. See Oliver Aff., Ex. T.

The Renos filed this action on December 18, 2001. On August 21, 2003, SupportKids voluntarily discharged the lien and acknowledged their error in filing the lien.

See April 13, 2004 Order at p. 3; Defendants Supportkids, Inc. and Richard C. Fry's Memorandum in Opposition to Plaintiffs' Motion to Amend Complaint to seek Punitive damages and to Compel Discovery ("Defs.' Mem.") at p. 15, n. 13.

## DISCUSSION

### I. Plaintiffs' Motion to Amend to Complaint to Seek Punitive Damages

A. Standard of Review

If claim arises under state law and the case is in federal court based on diversity jurisdiction, then Minn. Stat. §§ 549.191 and 549.20 apply to a motion to amend the Complaint to assert punitive damages. See Morlock v. West Central Education District, 46 F. Supp.2d 892, 923 (D. Minn. 1999) (citing Engele v. Independent Sch. Dist., 846 F. Supp. 760, 767 (D. Minn. 1994)). Given that the jurisdiction of this matter is based on diversity and the Renos' remaining causes of action are slander of title and defamation, Minnesota law applies in determining whether the motion to amend to add punitive damages should be granted.

The pleading of punitive damages claims under Minnesota law is governed by the requirements of Minn. Stat. §§ 549.191 and 549.20. See Zeelan Industries, Inc. v. De Zeeuw, 706 F. Supp. 702, 705 (D. Minn. 1989); see also Kuehn v. Shelcore, Inc., 686 F. Supp. 233, 235 (D. Minn. 1988).

Under § 549.191, a motion to amend to add a claim of punitive damages must set forth prima facie evidence in support of the motion, and must allege the "applicable legal basis under section 549.20." Minnesota courts have determined that "[p]rima facie

evidence is that evidence which, if unrebutted, would support a judgment in that party's favor." Swanlund v. Shimano Indus. Corp. 459 N.W.2d 151, 154 (Minn. Ct. App. 1990) (citation omitted). "[I]n applying the provisions of Minnesota Statutes Section 549.191, the Court should examine the evidence in support of a punitive damages claim, without considering the evidence submitted in opposition to the claim." See Olson v. Snapp Products, 29 F. Supp.2d 1027, 1033, n. 1 (D. Minn. 1998) (citing Northwest Airlines, Inc. v. American Airlines, Inc., 870 F. Supp. 1499, 1502-03 (D. Minn. 1994); Swanlund v. Shimano Indus., 459 N.W.2d 151, 154 (Minn. Ct. App. 1990)).

The "applicable legal basis" for this motion is that punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard of facts that create a high probability of injury to the rights or safety of others. See Minn. Stat. § 549.20, subd. 1; see also Gamma-10 Plastics, Inc. v. American Pres. Lines, Ltd., 32 F.3d 1244, 1255 (8th Cir. 1994), cert. denied 513 U.S. 1198 (1995) (quoting Swanlund., 459 N.W.2d at 154) (the clear and convincing "quantum of proof is implicitly incorporated into the requirement that the movant present a prima facie case" of deliberate disregard). "To be 'clear and convincing,' there must be 'more than a preponderance of the evidence but less than proof beyond a reasonable doubt.'" Ulrich v. City of Crosby, 848 F. Supp. 861, 868 (D. Minn. 1994) (quoting Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978)); see also Hern v. Bankers Life Cas. Co., 133 F.Supp.2d 1130, 1135 D. Minn. 2001) (finding that there must be more than a preponderance of the evidence, but less than proof beyond a

reasonable doubt) (citations omitted).

Under the statutory scheme, a defendant is deemed to have acted with deliberate disregard for the rights or safety of others (1) if it has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others, and (2) deliberately proceeds to act in conscious or intentional disregard of or with indifference to the high probability of injury to the rights or safety of others. Minn. Stat. § 549.20, subd. 1. The mere existence of negligence or of gross negligence does not rise to the level required so as to warrant a claim for punitive damages. See Ulrich, 848 F. Supp. at 868 (citations omitted); Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 381 (Minn. 1990); Herbst v. Northern States Power Co., 432 N.W.2d 463, 469 (Minn. Ct. App. 1988) (damages are not warranted even in situations in which the defendant made erroneous assumptions that caused injury). As the court explained in Wikert v. Northern Sand and Gravel, Inc.:

> [S]omething more than mere indifference to the rights and safety of others, such as that which was almost certainly present here, must be present to allow the "extraordinary" remedy of punitive damages. There must be maliciousness, an intentional or willful failure to inform or act, before imposing this form of deterrence and extreme punishment.

402 N.W.2d 178, 183 (Minn. Ct. App. 1987); see also Beniek v. Textron, Inc., 479 N.W.2d 719, 723 (Minn. Ct. App. 1992) rev. denied, (Minn. Feb. 19, 1992).

B. Analysis[1]

As a preliminary matter, this Court notes that Supportkids[2] devoted the majority of its opposition to the instant motion arguing that all of the Renos' claims fail as a matter of law. However, the continued viability of any of the claims asserted by the Renos was already decided by the District Court in its Order addressing defendants' motion for summary judgment. See April 13, 2004 Order. While the Court dismissed most of the Renos' claims, the slander of title and defamation claims did survive. Thus, the only arguments proffered by defendants bearing on the Renos' motion to amend are those made in connection with the Renos' slander of title and defamation claims.

With respect to the slander of title claim, Supportkids argued, as it did in its motion for summary judgment, that the claim failed because it did not meet the elements required under Minnesota law.

"The elements required for a slander of title claim are: (1) there was a false statement concerning real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; (4) the publication

---

[1] This Court rejects defendants' contention that the Renos' motion to add punitive damages should be denied because they did not follow Local Rule 15.1 and attach a proposed amended complaint. See Defs.' Mem. at pp. 11-12. This Court finds that defendants have sufficient notice based on the pleadings submitted by the Renos as to how they intend to amend their Complaint.

[2] The response to the Renos' motion was filed on behalf of defendants Supportkids and Fry. However, the Renos' motion to add a claim of punitive damages is only directed to Supportkids. Thus, this Court will refer to the response to the Renos' motion as the response of Supportkids.

of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages." See April 13, 2004 Order at p. 10 (citing Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000))

Supportkids argued that the Renos failed to establish that Supportkids filed the lien at issue maliciously. See Defs.' Mem." at p. 15. In addition, Supportkids argued that the Renos failed to show that their actions resulted in any "special damages" to the Renos. Id. at p. 15, n. 14. However, the District Court has already considered and rejected these contentions. It found that a reasonable factfinder could conclude that Supportkids acted maliciously when it filed the lien at issue, and that the attorney's fees incurred by the Renos to remove the lien from their title, qualify as "special damages." See April 13, 2004 Order at pp. 10-11.

With regards to the Renos' claim for defamation, Supportkids argued that the Renos' defamation claim is solely based on statements made by Supportkids to Ms. Reno regarding her husband, and that the Renos cannot prove that any statements made to Ms. Reno harmed Reno's reputation in the community or caused him actual damages. A closer examination of the Complaint shows that the Renos also alleged that defendants made defamatory statements to mortgage officers and other third parties, including credit reporting agencies, regarding Reno's failure to pay $122,474.07 in back child support. See Complaint, ¶¶ 159, 162-165. Further, the District Court concluded that a reasonable factfinder could conclude that plaintiffs have suffered damage as a

result of Supportkids' allegedly defamatory statements to these third parties. See April 13, 2004 Order at p. 12.

Thus, to the extent that Supportkids has urged this Court to deny the Renos' motion to amend based on its argument that the claims of slander of title and defamation fail as a matter of law, this position has been decided and was rejected.

Given that Supportkids has presented no other arguments in opposition to the Renos' motion to amend,[3] the Court will now examine the evidence presented by the Renos to determine whether it constitutes a prima facie case that the acts of Supportkids showed deliberate disregard of facts that created a high probability of injury to the Renos' rights. In this role, "the trial court is to do more than 'rubber stamp' the allegations in the motion papers." Shetka v. Kueppers, Kueppers, Von Feldt & Salmen, 454 N.W.2d 916, 918 n. 1. (Minn. 1990).

As an initial matter, the Court notes that slander of title and defamation are intentional torts (see Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., 556 N.W.2d 557, 560 (Minn. 1996) (finding that defamation is an intentional tort); Rush v. Minneapolis Community Development Agency, C9-96-285, 1996 WL 481523 at *2 (Minn. Ct. App. Aug 27, 1996) (finding that slander of title is an intentional tort)), and intentional torts frequently support an award of punitive damages as malice is inferred from such

[3] The Court notes that this is the only analysis and argument that Supportkids presented to the court in opposition to the Renos' motion to amend. That is, Supportkids never argued that the Renos did not meet the requirements of Minn. Stat. §§ 549.191 and 549.20.

conduct. See Molenaar v. United Cattle Co., 553 N.W.2d 424, 427 (Minn. Ct. App. 1996), rev. denied (Minn. Oct. 15, 1996) (citations omitted) (finding that punitive damages are proper remedy for intentional torts); Morrow v. Air Methods, Inc., 884 F. Supp. 1353, 1357 (D. Minn. 1995) ("[P]unitive damages are generally permitted for intentional torts."); Altman v. Knox Lumber Company, 381 N.W.2d 858, 865 (Minn. Ct. App. 1986) ("Intentional torts frequently support an award of punitive damages; malice is inferred from such conduct."). The Court also observes that in its decision on the motion for summary judgment, the District Court already determined that a reasonable fact finder could conclude that defendants acted maliciously when they improperly filed the lien on the Renos' property. See April 13, 2004 Order, at pp. 10-11.

With those observations in mind, the Court finds that the Renos have presented evidence to make out a prima facie case that the acts of Supportkids showed deliberate disregard of facts that created a high probability of injury to the Renos' rights.

First, the evidence presented by the Renos showed that Supportkids evidenced a deliberate disregard to Reno's rights by compounding monthly the interest from his delinquent child support payments, without any legal basis to do so. See Oliver Aff., Ex. O, Amended Interrogatory Answer No. 9. Both Louisiana and Minnesota only allow simple interest to be applied to judgments. See Garlepied Transfer, Inc. v. Guaranty Bank and Trust Co., 685 So.2d 194, 195 (La. Ct. App. 1997) (finding that Louisiana law only allows for compound interest by the agreement of the parties); see also LSA-C.C. Art. 2001 ("Interest on accrued interest may be recovered as damages only when it is

added to the principal by a new agreement of the parties made after the interest has accrued."); Minn. Stat. § 549.09, subd. 1(c) (interest on judgments "shall be computed as simple interest per annum."); Minn. Stat. § 548.091, subd. 1(a) (providing that interest rate on child support payments is governed by Minn. Stat. § 549.09, subd. 1); Sphere Drake Ins. PLC v. Trisko, 226 F.3d 951, 957 (8th Cir 2000) (finding that under Minn. Stat. § 549.09 a party is not entitled to compounded interest) (citations omitted).[4] Here, Supportkids not only compounded interest, but it did so on a monthly basis in contravention of Minnesota and Louisiana law.

Second, Supportkids placed a lien on the Renos' property in Anoka County, Minnesota based on an arrearage that was more than ten years past due, in violation of Minnesota law.

Supportkids concedes that the controlling statutes with regards to relying on the divorce decree from Louisiana to file a lien on the Renos' Minnesota property was Minn. Stat. §§ 548.091 and § 548.092. See Defs.' Mem. at p. 23. Under Minn. Stat. §

---

[4] The Renos also argue that interest does not begin to accrue on judgments, under Louisiana law, unless it is awarded by a court in its order or judgment. See Memorandum of Law in support of Punitive Damages ("Pl.'s Mem.") at p. 21 (citations omitted). However, contrary to the Renos' assertion, judicial interest on child support and spousal support is governed by La. C.C. art. 2000, which does not state that interest begins to accrue only on an award by order or judgment. See Bickham v. Bickham, 849 So.2d 707, 711 (La. Ct. App. 2003). La. C.C. art. 2000 provides '[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, . . ." Rather, judicial interest on past due child support payments begins to accrue from the date each payment is due. Id. (citing Miller v. Miller, 321 So.2d 318 (1975); Thompson v. Courville, 372 So.2d 579 (1979); Marshall v. Marshall, 390 So.2d 1365 (1980)).

548.091, subd. 1a:

> Any payment or installment of support . . . which is ordered as child support by judgment, decree, or order by a court in any other state, is a judgment by operation of law on and after the date it is due, is entitled to full faith and credit in this state and any other state, and shall be entered and docketed by the court administrator on the filing of affidavits as provided in subdivision 2a.

However, no “arrearage may be docketed . . . if the arrearage is more than ten years past due at the time of docketing.” Minn. Stat § 548.092.5 In this case, Supportkids based their lien on the Renos’ homestead on an order entered on May 2, 1980 in Orleans Parish County. See Oliver Aff. Ex. Q. The judgment that Supportkids based their lien on pertained to the separation of Reno and Ms. Falcon, which required that Reno pay $60.00 per week in child support, and not the final divorce decree issued on June 27, 1981, which only required that that Reno pay $45.00 per week in child support. Id., Exs. D, E.

---

5 See also Matson v. Matson, 333 N.W.2d 862, 866 (Minn. 1983) (citing Dent v. Casaga, 208 N.W.2d 734, 737 (Minn. 1973)) (finding that recovery on support payments may be had only on those payments which accrue within ten years from the date of the commencement of an action); Bednarek v. Bednarek, 430 N.W.2d 9, 11 (Minn. Ct. App. 1988) (finding same); Minn. Stat. § 541.04 (“No action shall be maintained upon a judgment or decree of a court of the United States, or of any state or territory thereof, unless begun within ten years after the entry of such judgment.”); In re Brinkman, 717 So.2d 681, 682 (La. Ct. App. 1998) (holding that a five year statue of limitations applied to child support actions that had been prescribed prior to the enactment in 1997 of a new statute of limitations for child support that increased the statute of limitations from five to ten years).

Supportkids acknowledges that after October 21, 1987, the date of the adoption, Reno had no obligation to pay child support for Summer Reno. Id., Ex. F, Interrogatory No. 10. Thus under Minn. Stat § 548.092, the latest Supportkids could have attempted to place a lien based on Reno's back child support payments, arising out of the Louisiana divorce decree, would have been October 21, 1997.[6] Nevertheless--with knowledge in 1999 that Reno's daughter had been adopted in 1987, that their client, Ms. Falcon, believed that Reno owed her only $13,598.25 in back child support, and its own internal policy that required it to obtain copies of court orders to verify the debts, review the applicable statute of limitations, and investigate any objections made by the debtor that the debt is not owed--Supportkids filed the lien at issue on April 5, 2000 and attested that as of January 13, 2000, Reno owed $122,474.07 in back child support even though any arrearages owed by Reno were well over ten years old. See A. Reno Aff., ¶13; Complaint ¶ 41; Answer of Defendant Supportkids, Inc., ¶ 41; Oliver Aff., Exs. H, M (at lines 403-05; 410-13, 430-33), O (Amended Answer to Interrogatory No. 18), Q. In addition, Supportkids intentionally let relevant parties know about the lien it had filed as is evidenced by its contact of Northland Mortgage by telephone and facsimile to inform Northland of the filing of the lien against the Renos' property. See Answer of Defendant Supportkids, ¶¶ 77-79.

[6] Supportkids has failed to identify any judgment against Reno regarding failure to pay back child support let alone any judgment that is less than ten years old.

Finally, despite the fact that Supportkids knew that it had improperly filed a lien on the Renos' property, it did not remove the lien at issue until August 21, 2003, almost 20 months after this suit was begun, and well after it was on notice that it did not have the necessary judgment to enforce lien it had placed on the Renos' home.

In sum, the evidence presented by the Renos makes out a prima facie case that that the acts of the Supportkids showed deliberate disregard of facts that created a high probability of injury to Renos' rights. Supportkids applied monthly compound interest to Reno's back child support in violation of Minnesota and Louisiana law; in violation of its own policies, it placed a lien on the Renos' property based on a judgment and arrearages that were over ten years old, in violation of Minn. Stat. § 548.092; it notified third parties of its invalid lien; and it took no steps to remove the lien for a significant period of time, despite notice that it was improper. As such, this Court grants the Renos' motion to amend their Complaint to add a claim for punitive damages.

## II. Motion to Compel

The Renos have requested that this Court order Supportkids to provide information in its possession regarding its financial condition for the purpose of determining the amount of punitive damages that are appropriate. Supportkids argues that the Renos are not entitled to this information on grounds that the discovery requests as to its financial condition are overlybroad and unduly burdensome, and in any event,

discovery of its financial condition is not relevant, as the Renos are not entitled to amend their Complaint to add punitive damages.[7]

The Request for Production of Documents that are at issue are as follows:

> **REQUEST NO. 4:** Please provide copies of all profit and loss expense statements from your business from during the last three years.
>
> **RESPONSE:** Supportkids objects to this request on the grounds that it is untimely and on the grounds that it is overlybroad, unduly burdensome and not reasonably calculated to lead to discovery of admissible evidence.
>
> **REQUEST NO. 5:** Please provide all financial documents you provided to any lender or financial institution in connection with an extension of credit or potential extension of credit to you or your affiliates.
>
> **RESPONSE:** Supportkids objects to this request on the grounds that it is untimely and on the grounds that it is overlybroad, unduly burdensome and not reasonably calculated to lead to discovery of admissible evidence.
>
> **REQUEST NO. 7:** Please provide all documents that list your assets, including but not limited to accounts receivable,

---

[7] Supportkids also argues that the Renos are not entitled to this information, as they have not provided the necessary recitation of the interrogatories or requests for production of documents that are at issue pursuant to Local Rule 37.2. See Defs.' Mem. at pp. 23-24. It is true that the Renos did not comply with this Rule. However, the purpose of Local Rule 37.2 is to allow the Court and the parties to understand what discovery is at issue. Here, the only discovery that covers Supportkids' financial condition are Request Nos. 4 through 7 in Plaintiff Kimberly Reno's Consolidated Interrogatories, Request for Production of Documents, and Request for Admissions, contained the Affidavit of Mr. Oliver. See Oliver Aff., Ex. S. As Supportkids argued that the requests are overlybroad and unduly burdensome, it is clear that Supportkids knew which discovery requests were at issue in the Renos' Motion to Compel.

> real estate, other accounts, judgments, securities, bonds or vehicles.
>
> **RESPONSE:** Supportkids objects to this request on the grounds that it is untimely and on the grounds that it is overlybroad, unduly burdensome and not reasonably calculated to lead to discovery of admissible evidence.

See Oliver Aff., Ex. S.[8]

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. See Fed. R. Civ. P. 26(b)(1). Minn. Stat. § 549.20, subd. 3 provides that "[a]ny award of punitive damages shall be measured by those factors which justly bear upon the purpose of punitive damages, including . . . the financial condition of the defendant, . . ." Given that this Court has found that the Renos may amend their Complaint to add a claim of punitive damages against Supportkids, its financial condition is relevant to measuring the appropriate award of punitive damages, if any, in favor of the Renos.

However, "[E]ven when dealing with requests for relevant information, the Rules recognize that discovery may be limited when the benefits to be obtained are outweighed by the burdens and expenses involved." Onwuka v. Federal Express Corp., 178 F.R.D. 508, 516 (D. Minn. 1997) (citing Fed. R. Civ. 26(b)(2)).

This Court finds that the Renos' requests are overlybroad and cumulative, and therefore only requires that Supportkids produce its profit-loss statements regarding its

8 The untimeliness objections by Supportkids were already addressed by this Court's July 18, 2004 Order [Docket No. 19].

business for the period of 2001 through the present. This information will be sufficient to supply Renos with evidence as to Supportkids' financial condition to assist the jury in its determination on any award of punitive damages.

In addition, Supportkids has requested that a protective order be put in place to protect any information regarding its financial condition should it be ordered disclosed. See Defs.' Mem. at p. 24. This Court agrees. The parties are instructed to submit to the Court on or before September 20, 2004, a proposed confidentiality order regarding disclosure of financial information for this Court's consideration. If the parties cannot agree to an appropriate confidentiality agreement, they will then submit their own confidentiality order to the Court for consideration by the Court by this date.

J.S.M.